THE GRAND RAPIDS TRUST COMPANY, NANA A. SMITH, GILBERT L. DAANE AND ARTHUR H. VANDENBERG, CO-ADMINISTRATORS D. B. N., C. T. A. OF THE ESTATE OF WILLIAM ALDEN SMITH, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 56465. Promulgated March 20, 1936.

*Jacob S. Seidman, C. P. A.,* and *Frank E. Seidman, C. P. A.,* for the petitioners.

*Hartford Allen, Esq.,* for the respondent.

### OPINION.

STERNHAGEN: The Commissioner determined a deficiency of $48,162.32 in the 1928 income tax of the decedent Smith, who instituted this proceeding before his death. We shall, for convenience, treat him individually as the petitioner. On his return, he reported capital net gain of $2,775, and to this the Commissioner added $385,163.20 as "increase in profit from sale of stock." This addition is explained in the notice of deficiency, as follows:

The sale of stock of the Herald Publishing Company is held to be a completed sale by you to the Federated Publishers, Incorporated, notwithstanding the fact that between July 26, 1928, the date the option of sale was given, and November 24, 1928, when final payment was made, you sold the stock subject to the option to the William Alden Smith Company under an agreement that you were to receive $570,000.00 over a term of approximately forty years. Since the William Alden Smith Company was only an intermediary of which you had full control, the alleged sale to this corporation has been ignored.

The proceeding is submitted entirely upon a stipulation of the facts, and detailed findings are not called for. Smith had for a long time owned shares in the Herald Publishing Co., which published the Grand Rapids Herald. On July 26, 1928, he made a contract in writing with R. J. Boyle to sell his shares to Boyle on December 1, 1928, for a price of $604,062.15, if on that date Boyle, after an inves-

tigation and audit, elected to purchase. Under the contract, Smith deposited his shares and Boyle deposited $42,522 with an escrow agent, this latter amount to be held for Smith as liquidated damages in case Boyle failed to buy the shares or as part of the price if the sale was made. Smith agreed to stay out of the newspaper publishing business for five years.

Smith and his immediate family had long been the sole shareholders in a corporation called the William Alden Smith Co., which invested in securities, mortgages, and real estate. Smith was the president and the majority shareholder.

On October 29, 1928, while the Boyle contract was yet in operation but the sale not yet due, Smith made a written contract with the corporation assigning to it all his rights under the Boyle contract and all his rights in the Herald shares in consideration for the corporation's promise to pay him $5,000 down and $565,000 payable in quarterly installments of $5,000 each with 5 percent interest. He notified Boyle and the escrow agent of the assignment.

On November 8, 1928, Boyle assigned his rights in the contract to Federated Publications, Inc., for $42,522 cash (the amount of Boyle's deposit) and the assumption of his obligations. The sale of the Herald shares was consummated, and cashier checks payable to William Alden Smith Co. aggregating $604,062.15 were "transmitted to [that] company through William Alden Smith."

The respondent's determination, as has been seen, was predicated upon a complete disregard of the assignment by Smith to the corporation, the reason for such disregard being the alleged full control by Smith of the corporation. The separateness of Smith and the corporation as juristic entities and also as taxpayers can not be disputed, and there is no evidence which would justify lack of recognition of either. *Burnet* v. *Clark*, 287 U. S. 410. The corporation, so far as appears, was not merely a technical legal entity but was a substantial being which had been carrying on business for many years before the transaction with Boyle. It can not be regarded as a mere ephemeral tax-saving device, as in *Gregory* v. *Helvering*, 293 U. S. 465, even if such a characterization justified its disregard. Although transactions between an individual and a corporation controlled by him, like intra family transactions, always invite close scrutiny to ascertain their genuineness, *Commissioner* v. *Eldridge*, 79 Fed. (2d) 629, the relation between participants is not alone sufficient to require that transactions between them be ignored. In this proceeding, we know only that the corporation's shares were held by Smith and his family, with no other evidence to ground even a suspicion that their affairs were not respectably conducted or the burdens of taxation not borne as fully as the benefits may have been

enjoyed. We are compelled, upon this record, therefore, to treat the corporation as a separate contracting entity and to inquire whether the petitioner is for any other reason taxable as if he had received in cash the $604,062.15 which was paid for the Herald shares in 1928.

Clearly the transaction of July 26th was not an immediate sale. It was an agreement between Smith and Boyle looking to the consummation of a sale on the following December 1. The deposit in escrow was not a delivery to Boyle and served only to shift possession without changing title. Smith could thereafter exercise no control over the shares in derogation of Boyle's right to acquire them on December 1, and no attempt was made by Smith to do so. His sale to the corporation of his right and interest in the shares was achieved by the same instrument whereby he assigned the contract, and thus the corporation was given full notice of the existence of Boyle's contractual rights and the escrow. The corporation acquired in the shares no greater interest than Smith had; but so much it did acquire to its full extent. The contract between Smith and Boyle was essentially an assignable contract for the simple sale of the shares. The only personal provision about which there could be any question was Smith's agreement to refrain for five years from engaging in the newspaper publishing business in Michigan. This provision Boyle could waive, and we may assume that he and his assignee did so since they apparently assented to the assignment and paid the money to the assignee. We see no reason in this record to doubt the validity of the assignment or to say that the parties acted otherwise than in strict accordance with it. Smith did not, in fact, receive Boyle's purchase price in December for his own, but only as the conduit through which the cashier's checks, which had already been made payable to the corporation, were physically transmitted to the corporation, which alone was entitled to them.

This is not a case of the transfer by a taxpayer of the proceeds or income from a sale or disposition of property. The taxpayer here disposed of the property before he had either the proceeds or the right to the proceeds; and this is true whether we regard such proceeds as the fruit of the shares or the fruit of the contract, for both had been assigned before the proceeds had become even a chose in action.

If we adhere steadfastly, as we think we must, to the separate recognition of Smith and the corporation, there is no demand in justice for taxing Smith as if he had actually received the $604,-062.15. He did not receive this amount, and before he had acquired a legal right to it he had converted his expectancy into an installment contract with the corporation. Thus, in 1928, his definite

and fixed right was never more than the right against the corporation to receive $5,000. If, in October 1928, Smith had been, let us say, hard pressed for cash and had made such a contract of assignment for say $250,000, payable at once, could it be said that his taxable gain should be measured nevertheless by the $600,000 fixed by the Boyle contract? *Charles W. Walworth*, 6 B. T. A. 788, holds substantially to the contrary, where the assignment was by gift. Cf. *Oscar Deinert*, 11 B. T. A. 651.

In our opinion, the petitioner may not be taxed as if he had received the $604,062.15 in 1928, but is taxable only upon the proportionate part of the total profit ultimately to be received, which is involved in the installment of $5,000 received in that year.

*Judgment will be entered under Rule 50.*